IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | | |
|---|---|---|
| CHRISTINA GUBBELS, and DAUN STODDARD,<br><br>Plaintiffs,<br><br>v.<br><br>ALEGENT HEALTH-COMMUNITY MEMORIAL HOSPITAL OF MISSOURI VALLEY, IOWA, d/b/a CHI HEALTH MISSOURI VALLEY,<br><br>Defendant. | ) | Case No. 1:26-cv-00013-SMR-SBJ<br><br>ORDER ON MOTION TO DISMISS |

Plaintiffs Christina Gubbels and Daun Stoddard allege that Defendant Alegent Health-Community Memorial Hospital of Missouri Valley, Iowa, doing business as CHI Health Missouri Valley, mishandled the remains of their deceased father. [ECF No. 1]. Defendant moves to dismiss Plaintiffs' claims of negligent infliction of emotional distress, negligence, fraud, professional liability, and violation of the right of sepulcher under Federal Rule of Civil Procedure 12(b)(6). [ECF No. 4]. Plaintiffs resist dismissal of the emotional distress and right of sepulcher claims. [ECF No. 11]. For the reasons that follow, Defendant's motion is GRANTED.

## I. BACKGROUND[1]

Plaintiffs are the surviving biological daughters of Martin Gillespie ("Decedent"). [ECF No. 1 ¶ 1]. Defendant is a corporation doing business as a hospital. *Id.* ¶ 2. On April 1, 2026, Decedent was taken to Defendant's hospital, where he was pronounced dead. *Id.* ¶ 5. During his

[1] The following facts are drawn from Plaintiffs' complaint and accepted as true for purposes of Defendant's Rule 12(b)(6) motion. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

life, Decedent never authorized anatomical gifts of his body in any manner prescribed under Iowa Code § 142C.3. *Id.* ¶ 6. Despite Defendant's knowledge that Decedent had biological children, it determined that his aunt was the next of kin with legal authorization to make anatomical gift decisions on his behalf. *Id.* ¶ 7. Decedent never authorized his aunt to make anatomical gift decisions for him and, despite Plaintiffs' availability, Defendant made no attempt to contact them. *Id.* ¶¶ 8, 9. Instead, Defendant made a "routine referral" to the Iowa Donor Network for the harvesting of Decedent's organs, tissue, and eyes. *Id.* ¶ 10. The Iowa Donor Network completed this work later that day. *Id.* ¶ 11. Decedent was then transported to a funeral home and cremated. *Id.* ¶ 12.

Plaintiffs allege that Defendant's conduct gives rise to five causes of action under Iowa law: negligent infliction of emotional distress, negligence, fraud, professional liability, and violation of the right of sepulcher. *Id.* ¶¶ 13–39. The negligent infliction of emotional distress claim alleges that Defendant owed Plaintiffs, "as biological next of kin to their deceased father," a duty "to follow all statutory laws and allow [Plaintiffs] the rights and duties to control the disposition of their father's body, including anatomical gifts." *Id.* ¶ 14. Plaintiffs allege that Defendant breached this duty when it prevented them from exercising control over the disposition of Decedent's body and when it failed "to conduct even a modicum of due diligence as to the statutory next of kin." *Id.* ¶ 15.

The violation of the right of sepulcher claim is similar. Plaintiffs allege that Iowa Code § 142C.4 provided them "the right and duty to control" Decedent's anatomical gifts—affording them priority over Decedent's aunt—and that they were reasonably available before any organ harvesting or invasive procedures began. *Id.* ¶¶ 32, 34, 35. Because Defendant ignored its own records indicating that Plaintiffs were Decedent's biological children and instead followed the

aunt's direction to make anatomical gifts, Plaintiffs allege that Defendant failed to act in good faith. *Id.* ¶ 36. Defendant thus breached Iowa law, Plaintiffs say, when it denied them "the right and duty to immediate possession and control [of] Decedent's body for preservation and military burial." *Id.* ¶ 38.

Defendant moves to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6). [ECF No. 4]. Defendant argues that neither the Iowa Code nor Iowa common law imposed on Defendant a duty to search for or obtain consent for an anatomical gift, or any other duty owed to Plaintiffs. *Id.* ¶¶ 8, 18, 21. Defendant also contends that Plaintiffs' fraud claim fails to satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *Id.* ¶ 22.

Plaintiffs consent to dismissal without prejudice of the fraud, negligence, and professional liability claims, but urge the Court to deny the motion as to their negligent infliction of emotional distress and right of sepulcher claims. [ECF No. 11 at 16–17]. Plaintiffs contend that Defendant owed them a legal duty under the common law and the Iowa Code, as borne out by the allegations in their complaint. *See id.* at 4–15. They also argue that their claim for negligent infliction of emotional distress falls within a recognized exception to the general rule that one cannot recover for negligently inflicted emotional distress without physical injury. And they contend that legal treatises and courts across the country have long recognized the quasi-property right of sepulcher in similar circumstances. *See id.*

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility demands more than

mere possibility—it requires factual allegations that permit the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Although the Court accepts all well-pleaded facts as true and draws all reasonable inferences in Plaintiffs' favor, it need not credit bare legal conclusions or "naked assertions devoid of further factual enhancement." *Christopherson v. Bushner*, 33 F.4th 495, 499 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678). Where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," or where a plaintiff has "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 558, 570.

Because Plaintiffs invoke the Court's diversity jurisdiction, the Court applies Iowa substantive law. *MBI Oil & Gas, LLC v. Royalty Ints. P'ship, LP*, 146 F.4th 650, 655 (8th Cir. 2025) (citation omitted). "Federal courts sitting in diversity do not create state law." *Crozier v. Wint*, 736 F.3d 1134, 1138–39 (8th Cir. 2013) (quoting *Novak v. Navistar Int'l Transp. Corp.,* 46 F.3d 844, 847 (8th Cir. 1995)). Nonetheless, when state law is unclear, the Court must predict how the Iowa Supreme Court would decide the issue. *Id.*

## III. DISCUSSION

Defendant argues that Plaintiffs have not stated a claim for negligent infliction of emotional distress or violation of the right of sepulcher because it owed no duty to Plaintiffs as a matter of law. [ECF No. 4 ¶¶ 8, 18, 21].[2] Plaintiffs respond that they have alleged duties arising under both the Iowa Code and Iowa common law. [ECF No. 11 at 4].

[2] Because Plaintiffs consent to dismissal of the negligence, fraud, and professional liability claims, the Court does not address them.

Plaintiffs' right of sepulcher claim expressly relies on Iowa Code § 142C.4, which "provides the right and duty to control the [] decedent's anatomical gifts." [ECF No. 1 ¶ 32]. Whether Plaintiffs also allege that the same duty arises under Iowa common law is ambiguous at best. *See id.* ¶¶ 31–39. The same is true of their negligent infliction of emotional distress claim. *See id.* ¶¶ 13–17. Nonetheless, because the parties have briefed both the statutory and common law issues, the Court addresses each in turn.

*A. Statutory Duty*

Plaintiffs contend that they have alleged duties arising under Iowa Code Chapter 142C, Iowa's Revised Uniform Anatomical Gift Act (the "Act"). [ECF No. 11 at 4]. Defendant makes a threshold argument that it remains unclear whether the Act creates a private right of action for Plaintiffs but that, even if it does, the Act imposes no duty owed to Plaintiffs. [ECF No. 4-1 at 8, 9]. Instead, Defendant says, any statutory duty is imposed on the procurement organization—here, the Iowa Donor Network. *See id.* at 11. Alternatively, if the Act imposed any limited duty on Defendant, it claims absolute immunity for its actions. *Id.* at 8 (citing Iowa Code § 142C.5A(3)). As a result, Defendant argues that Plaintiffs' negligent infliction of emotional distress and right of sepulcher claims fail as a matter of law.

Plaintiffs read the Iowa Code differently. *See* [ECF No. 11 at 12–15]. They argue that Iowa Code § 142C.4(1)(*c*) grants them the statutory right to determine whether Decedent's body would be used for organ donation, and they advance a hybrid common law and statutory argument that Iowa Code § 144C.5(1)(*c*) grants them the right to direct his funeral and burial. *Id.* at 14. Accordingly, they contend, Defendant "owed [Plaintiffs] a legal duty to avoid causing emotional distress with respect to [Decedent's] remains." *Id.* at 15. And because Plaintiffs disavow reliance

on Iowa Code § 142C.5A(1), they contend that Defendant cannot invoke the immunity protections in section 142C.5A(3). *Id.* at 13–14.

Defendant highlights that other state courts have declined to find a private right of action in their state's anatomical gift act. [ECF No. 4-1 at 9] (citing *Adams v. King County*, 192 P.3d 891, 899 (Wash. 2008)). The Court will nonetheless assume that Iowa's version of the Act creates one. In *Alcor Life Extension Foundation v. Richardson*, the Iowa Court of Appeals discussed the applicability of the Act to a transaction between a decedent and a scientific organization engaged in the study and practice of cryonic suspension. *See* 785 N.W.2d 717, 725–26 (Iowa Ct. App. 2010). Although the state appellate court was not tasked with determining whether the Act created a private right of action, it considered the statute's applicability in that context. *See id.* The Court thus declines to chart a new path and proceeds to the merits of Defendant's motion.

The Act was originally designed to "encourage the making of anatomical gifts" and eliminate "uncertainty as to the legal liability of those authorizing and receiving anatomical gifts, while respecting dignified disposition of human remains." *Id.* at 723 (citation omitted). Iowa Code § 142C.4—titled "Who may make anatomical gift of decedent's body or part — amending or revoking gift"—sets forth the order of priority for individuals who, if "reasonably available," may make an anatomical gift of a decedent's body. Iowa Code § 142C.4(1). Adult children, such as Plaintiffs, are third in line, behind designated agents and the decedent's spouse. *Id.* § 142C.4(1)(*a*)–(*j*). "A person shall not make an anatomical gift if, at the time of the death of the decedent, a person in a prior class under subsection 1 is reasonably available to make or to object to the making of an anatomical gift." *Id.* § 142C.4(2)(*b*).

Plaintiffs allege that Defendant owed them a duty "to follow all statutory laws and allow them the rights and duties to control the disposition of their father's body" and that the Act gave

them "the right and duty to control [Decedent's] anatomical gifts." [ECF No. 1 ¶¶ 14, 32]. At its core, their argument is that the Act imposed a statutory duty on Defendant to seek their permission before an anatomical gift was made, and that Defendant violated that duty when it failed to do so. This stretches the statute too far. The provisions of the Act that Plaintiffs cite do not impose any such duty on hospitals.

Plaintiffs appear to suggest that Defendant's statutory duty arose under Iowa Code § 142C.4(1)(*c*). [ECF Nos. 1 ¶ 32; 11 at 14]. Because Plaintiffs expressly disclaim reliance on section 142C.5A, titled "Search and notification," the Court need not consider the language of that provision. [ECF No. 11 at 14] ("The duty under section 142C.5A(1)(b) to perform a search of [Decedent] for documents . . . reflecting [Decedent's] wishes is not the basis for Plaintiffs' claims."). Nonetheless, their reliance on the Act's other provisions fares no better.

Despite more than half a century of anatomical gift legislation in Iowa, no Iowa court has ever extended the Act's language this far. *See Richardson*, 785 N.W.2d at 724 (citing 1969 Iowa Acts ch. 137). The Court likewise cannot do so today. Even if section 142C.4(1) creates a duty, it does not place that duty on hospitals or establish that Defendant owed a duty to Plaintiffs.

Plaintiffs allege that Defendant made a "routine referral" to the Iowa Donor Network for the harvesting of Decedent's organs, tissue, and eyes. [ECF No. 1 ¶ 10]. Once a referral is made, Iowa Code § 142C.8(7) places the relevant duty on the procurement organization. "Upon referral by a hospital under subsection 1, a procurement organization shall make a reasonable search for any person listed in section 142C.4 having priority to make an anatomical gift on behalf of a prospective donor." Iowa Code § 142C.8(7).

The Act's definitions confirm where that obligation lies. The priority scheme in section 142C.4 reaches only persons who are "reasonably available." *Id.* § 142C.4(1). And the Act defines

that term by reference to the procurement organization, not the hospital: a person is reasonably available if "able to be contacted by a procurement organization without undue effort and willing and able to act in a timely manner consistent with existing medical criteria necessary for the making of an anatomical gift." *Id.* § 142C.2(29).

Nor did Plaintiffs allege that the Act imposed a corresponding duty Defendant owed to them before referral. They simply alleged that Defendant breached a duty owed to Plaintiffs "to follow all statutory laws and allow them the rights and duties to control the disposition of their father's body" when it prevented Plaintiffs from exercising that right and "fail[ed] to conduct even a modicum of due diligence as to the statutory next of kin." [ECF No. 1 ¶¶ 14, 15]; *see also id.* ¶¶ 37, 38. Even if Plaintiffs had alleged a pre-referral duty, statutory language imposing a duty on procurement organizations after referral—and the absence of any statutory language imposing a similar duty on hospitals before referral—is strong evidence that the statute does not support Plaintiffs' argument. *See Vagts v. N. Nat. Gas Co.*, 8 N.W.3d 501, 516 (Iowa 2024) (applying the legal maxim of *expressio unius est exclusio alterius*, the "expression of one thing is the exclusion of another").

Nor does *Overturff v. Raddatz Funeral Services, Inc.* compel a different result. 757 N.W.2d 241 (Iowa 2008). There, a widow alleged that a funeral home owed her a duty under the statutes and administrative rules governing funeral directors to allow her to direct the disposition of her husband's remains. *Id.* at 244, 246. The Iowa Supreme Court explained that "[a] prerequisite to her claim is a duty running to her from [the funeral home]," and that "[s]he must show that she had the right to dictate the appropriate disposal of [the decedent's] body, *i.e.*, that [the funeral home] had a duty to follow her dictates." *Id.* at 246. Her claim failed because the governing rule gave priority to the decedent's son, who held a durable power of attorney for health

care, so the funeral home violated no duty by following his directions. *Id.* Plaintiffs stand on firmer ground as to the right. As Decedent's adult children, they held priority over his aunt under section 142C.4(1). But *Overturff* requires more than a right; it requires a corresponding duty in the defendant to honor it. The rule in *Overturff* identified whom the funeral home itself could take direction from. The Act here, by contrast, assigns the obligation to locate and consult persons with priority to the procurement organization, not the referring hospital. *See* Iowa Code §§ 142C.2(29), 142C.8(7). And *Overturff* expressly declined to decide "whether a breach of the statute or regulations involving funeral directors gives rise to a cause of action for negligent infliction of emotional distress without physical injury." 757 N.W.2d at 246 n.4.

The Court acknowledges that Plaintiffs' resistance sets forth a narrow, related argument that Defendant's "'routine referral' to the Iowa Donor Network prevented Plaintiffs from preserving [Decedent's] body for military burial" and that Plaintiffs, not Defendant, "were the persons with the right to decide what customs and sentiments would be necessary." [ECF No. 11 at 12]. But this argument, again, overlooks section 142C.8(7) and other provisions of the Act. Although the Act does not require hospitals to make a referral to a procurement organization, it permits them to do so. *See* Iowa Code § 142C.9 (requiring hospitals to enter into agreements or affiliations with procurement organizations); *id.* § 142C.7 (establishing procedures for transmission of confidential information from hospital to procurement organization on referral); *id.* § 142C.8(7) (discussing the rights and duties of the procurement organization when a hospital makes a referral). The Court cannot conclude that Defendant violated any statutory duty owed to Plaintiffs by taking a statutorily permissible action.

Plaintiffs' belated citation to Iowa Code § 144C.5(1) does not save their claims. *See* [ECF No. 11 at 14]. Section 144C.5(1) codifies the right of sepulcher; it establishes an order of priority

for the individuals who have "the right to control final disposition of a decedent's remains." Iowa Code § 144C.5(1). But Plaintiffs do not argue that this provision created a statutory duty Defendant owed to Plaintiffs, nor does their complaint allege that it did. Rather, they alleged that the relevant right comes from Iowa Code § 142C.4, which granted them "the right and duty to control [Decedent's] anatomical gifts." [ECF No. 1 ¶ 32].

Plaintiffs nonetheless use section 144C.5(1) to cobble together a hybrid statutory and common law argument. They contend that Defendant's "common-law legal duties extend to Plaintiffs here" because Plaintiffs "have the statutory right under Iowa Code § 144C.5(1)(c) to direct [Decedent's] funeral and burial." [ECF No. 11 at 14]. This argument presupposes that the duty arose under the common law, but as discussed below, Plaintiffs' common law arguments fail. And to the extent section 144C.5(1) gave Plaintiffs the right to control Decedent's final disposition, *Overturff* explains that such a right supports a claim only against one with a corresponding duty to follow the right-holder's directions. 757 N.W.2d at 246. The complaint alleges that a funeral home, not Defendant, cremated Decedent. [ECF No. 1 ¶ 12]. Nothing in section 144C.5(1) places that duty on a hospital that took a statutorily permitted action of referring a patient to a procurement organization.

The Court has already concluded that Defendant owed Plaintiffs no duty under Iowa Code § 142C.4, and Plaintiffs do not allege that Iowa Code § 144C.5(1) imposed an independent statutory duty on Defendant. Nor do they now argue that section 144C.5(1) does. Plaintiffs' fleeting reference to this provision in their resistance is thus insufficient to save their claims. As a result, Plaintiffs have failed to plead a statutory duty Defendant owed to them sufficient to state a claim for negligent infliction of emotional distress or a violation of the right of sepulcher.

*B. Common Law Duty*

Defendant argues that it did not owe any common law duty to Plaintiffs because there was no relationship between the parties. [ECF No. 4-1 at 12]. It asserts that Plaintiffs' negligent infliction of emotional distress claim fails because Iowa follows the traditional rule that, in the absence of physical harm, one does not owe a duty to avoid causing emotional distress to others. *Id.* Although exceptions to this rule exist, Defendant insists that none applies. *Id.* at 13.

Plaintiffs disagree. [ECF No. 11]. They argue that the older quasi-property theory of violation of the right of sepulcher and the newer tort theory of negligent infliction of emotional distress, have become unified in recent years. *Id.* at 5. Regardless of the title of the claim, Plaintiffs argue that Iowa common law establishes that Defendant owed them duties not to mistreat their father's body and to avoid causing emotional distress by interfering with their rights to possession and burial of Decedent's remains. Defendant breached those duties, Plaintiffs say, when it made a "routine referral" to the Iowa Donor Network for organ and tissue harvesting. *Id.* at 6, 12.

Plaintiffs acknowledge that stating a cognizable claim of negligent infliction of emotional distress generally requires physical harm, but argue that they fall within an exception to that rule based on the nature of their relationship with Defendant. *Id.* at 6–7. Plaintiffs highlight legal treatises and state court cases from across the country imposing liability for emotional harm caused by the mistreatment of human remains and recognizing the right of sepulcher. *Id.* at 5–8, 10–11. They also cite several Iowa cases in support of their argument. *See id.* at 8–10. At bottom, they argue that Defendant "had a recognized legal duty under the common law not to cause emotional harm to persons such as Plaintiffs through the negligent mistreatment of human remains," even without a corresponding physical injury. *Id.* at 10.

The Court starts with Plaintiffs' negligent infliction of emotional distress claim. Iowa law imposes a general rule "that there can be no recovery for emotional distress 'absent intentional conduct by a defendant or some physical injury to the plaintiff.'" *Clark v. Est. of Rice ex rel. Rice*, 653 N.W.2d 166, 169 (Iowa 2002) (citation omitted). This rule, subject to certain exceptions, "generally recognizes there is no duty in tort law to avoid causing emotional harm." *Miranda v. Said*, 836 N.W.2d 8, 14 (Iowa 2013). Here, Plaintiffs rely on an exception that "exists when the nature of the relationship between the plaintiff and the defendant is such that it supports the imposition of a duty of care on the defendant to avoid causing emotional harm to the plaintiff." *Clark*, 653 N.W.2d at 170–171; *see also Said*, 836 N.W.2d at 14. Since first recognizing this exception, the Iowa Supreme Court's "cases have recognized a duty only when there has been some contractual relationship between the parties." *Clark*, 653 N.W.2d at 171; *see also id.* at 173 (explaining that the relationship "requires more than an emotional tie between the parties").

Plaintiffs do not allege that they had a contractual relationship with Defendant. They cite legal treatises that suggest individuals and entities may be liable for emotional harm caused by the mistreatment of human remains, but they do not cite any Iowa case law adopting those treatises. *See* [ECF No. 11 at 7–10]. More importantly, relevant Iowa cases applying the exception feature a contractual relationship or reject similar claims for lack of one. *See, e.g.*, *Overturff*, 757 N.W.2d at 245–47 (affirming summary judgment for a funeral home on a widow's negligent infliction of emotional distress claim because she had no contract with the funeral home and the governing rule gave another family member the right to direct the disposition); *Millington v. Kuba*, 532 N.W.2d 787, 792–94 (Iowa 1995) (affirming summary judgment for a funeral home that cremated the decedent at one daughter's direction despite his other children's known objections, because the objecting children had no contract with the funeral home); *Meyer v. Nottger*, 241 N.W.2d 911, 921

(Iowa 1976) (holding that "recovery of damages may be had in appropriate cases for mental distress, absent physical trauma, arising out of the breach of a contract to perform funeral services"). The lack of an alleged contractual relationship between Plaintiffs and Defendant thus forecloses Plaintiffs' reliance on this exception as a matter of law.

Plaintiffs' right of sepulcher claim also fails. Iowa has codified the right to control a decedent's final disposition. Iowa Code § 144C.5(1). But neither Plaintiffs nor Defendant has identified a single Iowa case recognizing a common law cause of action for interference with that right. *See* [ECF No. 11 at 11] (citing *Larson v. Chase*, 50 N.W. 238, 239 (Minn. 1891)). The Court's review similarly yielded no results. Even the authority on which Plaintiffs rely counts Iowa among the "few courts" that "do not recognize a distinct tort" for such claims, "thereby leaving family members to generic claims for both intentional and negligent infliction of emotional distress." Restatement (Third) of Torts: Miscellaneous Provisions § 48F reporters' note to cmt. d (Am. L. Inst., Tentative Draft No. 2, 2023) (citing *Millington*, 532 N.W.2d at 793).

Plaintiffs' citation to legal treatises and case law from across the country, if anything, cuts the other way. Iowa courts are aware of legal developments in other states and zealously guard their right to continue interpreting the law as they see fit. *See State v. Brown*, 16 N.W.3d 288, 294 (Iowa 2025) ("While we can learn from observing what other jurisdictions do in similar circumstances, we have no obligation to follow the law of other jurisdictions and harmonize our law with theirs."). If Iowa recognized a common law cause of action for interference with the right of sepulcher, Iowa cases would stand for that proposition. It is not for this Court to be the first to read such a cause of action into the Iowa common law. The Court thus concludes that Plaintiffs have failed to allege a common law duty Defendant owed to them sufficient to sustain their right of sepulcher and negligent infliction of emotional distress claims.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is GRANTED. [ECF No. 4]. Plaintiffs' complaint is DISMISSED without prejudice. [ECF No. 1]. Judgment shall be entered accordingly.

IT IS SO ORDERED.

Dated this 2nd day of November, 2026.

STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT